696 So.2d 728 (1997)
Quinton DRYDEN, et al., Petitioners,
v.
MADISON COUNTY, Florida, Respondent.
No. 87594.
Supreme Court of Florida.
May 15, 1997.
Rehearing Denied July 9, 1997.
Larry E. Levy and Loren E. Levy of the Levy Law Firm, Tallahassee, for Petitioners.
George T. Reeves and Edwin B. Browning, Jr. of Davis, Browning & Schnitker, P.A., *729 Madison; and Ken Van Assenderp, Tallahassee, for Respondent.
Robert A. Butterworth, Attorney General; Joseph C. Mellichamp, III, Senior Assistant Attorney General and Thomas P. Crapps and Eric J. Taylor, Assistant Attorneys General, Tallahassee, for Florida Department of Revenue, Amicus Curiae.
Keith C. Hetrick, Tallahassee; and Robert M. Rhodes and Victoria L. Weber of Steel, Hector & Davis L.L.P., Tallahassee, for Florida Home Builders Association, Amicus Curiae.
Robert L. Nabors and Virginia Saunders Delegal of Nabors, Giblin & Nickerson, P.A., Tallahassee; and Herbert W.A. Thiele, President, Florida Association of County Attorneys, Inc., Tallahassee, for Florida Association of Counties and Florida Association of County Attorneys, Amici Curiae.
Daniel C. Brown of Katz, Kutter, Haigler, Alderman, Marks, Bryant & Yon, P.A., Tallahassee, for Water Oak Management Corporation and John Richard Sellars, Amici Curiae.
Sanford A. Minkoff, Lake County Attorney, Tavares, for Lake County, Florida, Amicus Curiae.
SHAW, Justice.
We have for review Dryden v. Madison County, 672 So.2d 840 (Fla. 1st DCA 1996), wherein the court certified:
Is the holding of Gulesian v. Dade County School Bd., 281 So.2d 325 (Fla.1973), which provides that under certain circumstances a governmental entity need not refund proceeds from a tax or, in this case, a special assessment that is later determined to be illegal, still valid after the decisions of McKesson v. Division of Alcoholic Beverages and Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), and Kuhnlein v. Department of Revenue, 662 So.2d 308 (Fla.1995)[?]
Id. at 844. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer in the affirmative and approve Dryden as explained below.
Madison County in 1989 adopted four ordinances levying special assessments on property located in the county for garbage services, landfill closure, ambulance service, and fire protection. The validity of the ordinances was challenged in 1990 in two suits one by Foxx, a resident of the City of Madison, and one by Dryden, a class action on behalf of county residents. The suits, wherein the plaintiffs sought a refund of the 1989 and 1990 assessments, were later consolidated.
The court subsequently granted summary judgment in favor of Dryden and ordered refunds, finding that the ordinances had been adopted without the consent of the city dwellers within the county. While the case was pending on appeal, the plaintiffs in 1992 filed a second suit, seeking refund of 1991, 1992, and 1993 assessments. The parties agreed that the district court decision in the first suit would be binding in both cases. The district court ultimately ruled that 1) the ordinances were invalid, and 2) a refund on motion for summary judgment was premature since factual and legal issues remained. Madison County v. Foxx, 636 So.2d 39 (Fla. 1st DCA 1994).
On remand, the trial court found that the county had acted in good faith in levying the 1989 and 1990 assessments, but not the 1991, 1992, and 1993 assessments. The court ruled that Dryden was not entitled to refunds for 1989 and 1990, but was entitled to refunds for 1991, 1992, and 1993, with interest accruing on the date the assessments were paid. The district court affirmed on the refund issue but reversed on the interest issue, concluding that no final money judgment had been entered on the refunds.
Dryden contends that the district court erred in finding him unentitled to refunds for 1989 and 1990. (The county does not contest the refunds for 1991, 1992, and 1993.) Dryden asserts that the court relied on outdated precedent. We disagree.
Where an invalid tax scheme discriminates among citizens without a legal basis and bestows no commensurate benefit, a refund may be in order. Department of Revenue v. Kuhnlein, 646 So.2d 717 (Fla. *730 1994).[1] Otherwise, the tax could constitute an unlawful taking of property in violation of state and federal rights. McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990).[2] Where an invalid tax scheme applies across the board and confers a commensurate benefit, on the other hand, "equitable considerations" may preclude a refund. Gulesian v. Dade County School Bd., 281 So.2d 325 (Fla.1973).[3]
In the present case, the 1989 and 1990 assessments fall in the latter category. The assessments were non-discriminatory (i.e., they applied across the board to all property owners in the county) and they conferred a commensurate benefit (i.e., they provided for garbage collection and disposal, landfill closure, ambulance service, and fire protection). Further, the county acted in good faith in imposing these assessments.[4] Competent substantial evidence supports the denial of refunds for 1989 and 1990.
Dryden also claims that the county should be required to pay interest on the 1991, 1992, and 1993 refunds. We disagree. The amount owed in this class action is still indeterminate and no final money judgment has been rendered. We recently addressed this issue:
The issue in this case is whether those individuals who are due a refund are entitled to prejudgment and postjudgment interest. We answer the question in respect to prejudgment interest in the negative, finding that there is no entitlement to prejudgment interest in this action to recover a tax refund. We answer the question in respect to postjudgment interest by determining that there is not a final money judgment, and therefore there is not at present an entitlement to postjudgment interest in this case under these circumstances.
Kuhnlein v. Department of Revenue, 662 So.2d 308, 308 (Fla.1995) (citations omitted). Under the facts of this case, Dryden is not presently entitled to postjudgment interest.
We answer the certified question in the affirmative and approve the decision in Dryden as explained herein.
It is so ordered.
KOGAN, C.J., and OVERTON, GRIMES, HARDING and ANSTEAD, JJ., concur.
WELLS, J., dissents with an opinion.
WELLS, Justice, dissenting.
I dissent from the majority's holding that equitable considerations preclude a refund of unlawful assessments. Precluding any remedy to those taxpayers who complied with the law and paid the invalid special assessments constitutes a denial of due process. Moreover, the majority's reliance on Gulesian v. Dade County School Board, 281 So.2d 325 (Fla.1973), is misplaced. Even if Gulesian is still valid after McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990) (McKesson II), this case does not come within the narrow holding of Gulesian. To deny the taxpayers who paid the assessments any relief would additionally violate equal protection and is patently unfair.
*731 I also dissent from the holding that the trial court erroneously ordered postjudgment interest in this case. Because Madison County (the County) entered into a stipulation under which it agreed to refund money obtained through the improper special assessments in the years 1991, 1992, and 1993, it is inequitable not to provide the property owners postjudgment interest here. Accordingly, I would quash the district court's opinion.
The Fourteenth Amendment provides that a state may not deprive any person of property without due process of law. See U.S. Const. amend. XIV, § 1. The United States Supreme Court interpreted this amendment in McKesson II, in which it set forth the legal analysis appropriate for determining a state's constitutional duty to provide relief to property owners for the payment of unlawful assessments. In McKesson II, the Court reviewed our decision in Division of Alcoholic Beverages & Tobacco v. McKesson Corp., 524 So.2d 1000 (Fla.1988) (McKesson I), in which we denied a refund of taxes paid under a statute found to violate the Commerce Clause. We cited Gulesian in support of our finding that the prospective nature of the rulings was proper in light of the equitable considerations, including the good-faith reliance on a presumptively valid statute and the possibility that any refund would result in a windfall to those who paid the tax. Id. at 1010.
In McKesson II, the United States Supreme Court reversed our decision. In so doing, the Court stated that prospective relief by itself did not exhaust the requirements of federal law. McKesson II, 496 U.S. at 31, 110 S.Ct. at 2247. The Court explicitly rejected the position that equitable considerations of good-faith reliance by the Division of Alcoholic Beverages and Tobacco on a presumptively valid statute allowed the state to deny a refund. Id. at 44, 110 S.Ct. at 2254. Addressing the contention underlying this position, that a requirement that a state provide a refund for what is later determined to be an unconstitutional tax would frustrate the state's ability to engage in sound financial planning, the Court found:
A State's freedom to impose various procedural requirements on actions for postdeprivation relief sufficiently meets this concern with respect to future cases. The State might, for example, provide by statute that refunds will be available only to those taxpayers paying under protest or providing some other timely notice of complaint; execute any refunds on a reasonable installment basis; enforce relatively short statutes of limitations applicable to such actions; refrain from collecting taxes pursuant to a scheme that has been declared invalid by a court or other competent tribunal pending further review of such declaration on appeal; and/or place challenged tax payments into an escrow account or employ other accounting devices such that the State can predict with greater accuracy the availability of undisputed treasury funds. The State's ability in the future to invoke such procedural protections suffices to secure the State's interest in stable fiscal planning when weighed against its constitutional obligation to provide relief for an unlawful tax.
See McKesson II, 496 U.S. at 45, 110 S.Ct. at 2254-55 (footnote omitted). The Court went on to note that if the state's reliance on a presumptively valid statute was a relevant consideration to its obligation to provide relief for its unconstitutional deprivation of property, such good faith was not present in this case. Id. at 46-47, 110 S.Ct. at 2255-56.
Recently, we considered the significance of McKesson II within the context of the challenge to the motor vehicle impact fee. See Department of Revenue v. Kuhnlein, 646 So.2d 717 (Fla.1994). In Kuhnlein, we acknowledged that under McKesson II, the State could be entitled to fashion a retroactive remedy in cases involving an improperly levied fee and courts should give the legislature the opportunity to fashion a retroactive remedy within a reasonable period of time. Id. at 727 (on motion for clarification). However, we noted that because the retroactive remedy in that case would be highly imperfect and would involve delays that would result in fundamental injustice, the trial court did not abuse its discretion in ordering a refund. Id.
*732 After McKesson II and Kuhnlein, it is clear that if a state places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge the tax's legality, the Due Process Clause of the Fourteenth Amendment obligates the state to provide meaningful backward-looking relief to rectify any unconstitutional deprivation. See McKesson II, 496 U.S. at 31, 110 S.Ct. at 2247. Although McKesson II and Kuhnlein involved federal constitutional issues founded on the Commerce Clause, the rationale for refunding the unlawful tax in those cases is applicable to this case. Exaction of a tax constitutes a deprivation of property, see McKesson II, 496 U.S. at 36, 110 S.Ct. at 2250; therefore, federal due process requires the state to provide a clear and certain remedy for the unconstitutional deprivation of tax moneys. It is also not a meaningful distinction that McKesson II and Kuhnlein involved "taxes" and this case involves a "special assessment." The constitutional principles relevant to each case are the same because whatever the label, a government-imposed exaction of money from a citizen must conform to the law to be in compliance with due process.
The trial court determined that in 1988, the County began researching additional revenue sources. The County determined that the use of special assessments was the best source of revenues, and it hired legal counsel to draft the ordinances. In 1989, the County adopted four ordinances purporting to levy special assessments against property located within the county for garbage collection and disposal, landfill closure, ambulance service, and fire protection.
The validity of the ordinances was challenged by taxpayers asserting that the ordinances were deficient because the County failed to comply with section 125.01(1)(q)(2), Florida Statutes (1989), and demanding refunds of all levies previously paid. In response to the suits, the County enacted new ordinances purporting to amend the 1989 ordinances. However, the 1989 ordinances were found to be invalid for the total failure to comply with section 125.01(1)(q)(2), Florida Statutes (1989). See Madison County v. Foxx, 636 So.2d 39, 50 (Fla. 1st DCA 1994). To say that the County could collect these unlawful special assessments by coercive means and not incur any obligation to remedy this constitutional violation clearly contravenes the Constitution.
Moreover, although neither McKesson II nor Kuhnlein specifically overruled Gulesian, the continuing vitality of Gulesian in light of these decisions is questionable. See McKesson II, 496 U.S. at 46-47, 110 S.Ct. at 2255-56. Nevertheless, even if Gulesian is still good law, I do not believe the very limited exception afforded by Gulesian to be applicable here. The evidence in this case does not establish that the County acted within the "good faith" parameters of Gulesian. In Gulesian, this Court upheld a trial court's ruling that equitable considerations precluded refunds of taxes based on a presumptively valid statute which was later ruled unconstitutional. The Court gave two reasons for its decision: ordering a refund in the small amounts that would be required would impose an intolerable burden on the school board; and the school board acted in good faith in relying on a presumptively valid statute and to impose a refund would compound the school board's fiscal problems. See id. at 326. However, the particularly persuasive fact was that the taxing authority relied upon a presumptively valid statute which had been so held by a trial court but later reversed by the appellate court. Id. at 327.[5] This point was recognized in Coe v. Broward County, 358 So.2d 214, 215-16 (Fla. 4th DCA 1978), in which the court noted that Gulesian had carved out a very narrow exception to the taxpayer's right to a refund and that good faith was clearly evident in Gulesian because the school board acted at all times in accordance with the law as then interpreted by the courts and enacted by the legislature.
Unlike the taxing authority in Gulesian, the County did not act in reliance on a state statute caught up in a reversed court interpretation as to its constitutionality. Rather, *733 the County failed to comply with the precise statute it relied upon in enacting its ordinances. Although the County drafted its ordinances and levied assessments based upon advice from various sources, a government with the power to exact property from its citizens clearly should be held to a standard that it will know and follow the law. Perhaps those who gave the County the erroneous advice concerning the adoption of the ordinances should have the ultimate responsibility, but those who paid under the threat of the County's power to exact the payment should not be held to have no recourse against the unlawful exaction.
The facts presented in this case are simply so different from what occurred in Gulesian that it is erroneous to apply the good-faith exception of Gulesian. See McKesson II, 496 U.S. at 46-47, 110 S.Ct. at 2255-56 (state's reliance on statute similar to one found unconstitutional several years earlier precluded state's reliance on an equitable justification to avoid affording relief). It is my concern that the majority opinion does not recognize the narrowness of the exception in Gulesian. Rather, the majority says that the exception saves an invalid tax scheme which applied across the board and conferred a commensurate benefit. Majority op. at 731-32. This notion is foreign to Gulesian.
Last, precluding a refund of unlawful assessments also constitutes a denial of equal protection of the law and is patently unfair. The facts in this case indicate that about one-half of the property owners refused to pay and suffered liens against their property. However, all of the liens were subsequently canceled by the County, resulting in those who simply refused to obey the requirement having to pay nothing. Therefore, county property owners who acted in violation of the law by simply not paying the assessments are having their conduct rewarded by having their liens canceled while residents who complied with the law are unable to receive a commensurate benefit.
In conclusion, I would reverse the trial court's order because I believe this case is controlled by McKesson II. The County has an obligation to rectify the invalidity of its deprivation of property by providing retroactive relief for taxpayers who claimed a refund. I do not believe that the ultimate burden of the County's mistake should fall only on those property owners who did what we expect all citizens to dopay when the government sends the notice to pay.
Additionally, I dissent from the majority's holding that the property owners in this case are not entitled to postjudgment interest for assessments paid on money refunded in 1991, 1992, and 1993. On May 27, 1992, the parties entered into a stipulation under which they agreed that since the issues concerning the assessments assessed for 1991, 1992, and 1993 were similar to and controlled by the resolution of the issues concerning the assessments assessed in 1989 and 1990, the resolution of the later assessments should be held in abeyance pending resolution of the earlier assessments. In this stipulation, the parties specifically noted:[6]
If such ordinances are found to be unlawful and a refund ordered all special assessments and/or non-ad valorem assessments collected pursuant thereto shall be held void and refunds shall be made to Plaintiffs and all members of the class paying the same.
The next day, the trial court entered an injunction ordering that the County would ensure that adequate funds would be available to pay any required refund.
In its final order, the trial court found:
For refunds of assessments for Years 1991, 1992 and 1993 challenged in Case No. 92-173, the Plaintiffs are entitled to refund of those amounts paid after October 31, 1991, together with post judgment interest following the November 25, 1991 Final Judgment pursuant to Section 55.03, Florida Statutes (1993), at the rate of 12 percent, such interest to be computed from the date of payment. See Palm Beach County vs. Town of Palm Beach, 579 So.2d 719 (Fla.1991). This is not prejudgment interest as Case No. 92-173 which *734 challenged the assessments for each of those years was held in abeyance by stipulation of the parties recognizing that since the ordinances and assessments and issues raised concerning same were identical in both cases, the outcome in the first case would control the outcome of the second. Thus, this Court's Final Judgment finding the Ordinances and assessments invalid, null and void controls Case No. 92-173. The only issue remaining to be resolved in Case No. 92-173 was the refund issue remanded to this Court and accordingly the cases were consolidated for disposition on remand. The County continued to assess and collect the assessments after this Court's Final Judgment dated November 25, 1991 and now must make refund.
On these facts, the majority's reliance on Kuhnlein v. Department of Revenue, 662 So.2d 308 (Fla.1995), is misplaced. In Kuhnlein, we found no entitlement to postjudgment interest in the absence of a final money judgment. Id. Kuhnlein is distinguishable because here the parties by stipulation clearly contemplated that the determination of the 1989 and 1990 assessments would control. Consistent with the stipulation, the trial court ordered the County to pay postjudgment interest to relate back to the date of payment. In light of the conduct of the parties, I would find it inequitable not to allow postjudgment interest as found by the trial court. Accordingly, I respectfully dissent.
NOTES
[1] This Court held that a refund was required where the Florida Legislature imposed an unlawful $295 impact fee on cars purchased in other states and then registered in Florida by Florida residents. Department of Revenue v. Kuhnlein, 646 So.2d 717 (Fla.1994).
[2] The United States Supreme Court ruled that a refund may be in order where a Florida liquor excise tax gave improper tax breaks for liquor made from products commonly grown in Florida. McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990).
[3] This Court held that "equitable considerations" precluded refund of an unlawful .82 mill excess where the school board acted in good faith, where individual refunds to 350,000 taxpayers would be nominal, and where the burden on the school board would be "intolerable". Gulesian v. Dade County School Bd., 281 So.2d 325 (Fla. 1973).
[4] We agree with the district court that the record supports the trial court's finding of good faith. See Dryden, 672 So.2d at 843 ("We find that there was substantial competent evidence to support the trial court's conclusion that the county acted in good faith in enacting the 1989 and 1990 ordinances....").
[5] See also State v. Greer, 88 Fla. 249, 102 So. 739 (1924) (rights acquired under a statute while the statute is duly adjudged to be constitutional are constitutionally protected legal rights).
[6] At the trial, there was testimony from a county commissioner that the stipulation required a refund with interest if the assessments were found to be unlawful.