727 So.2d 245 (1999)
Quinton DRYDEN, et al., Petitioners,
v.
MADISON COUNTY, Florida, Respondent.
No. 87,594.
Supreme Court of Florida.
January 21, 1999.
Larry E. Levy and Loren E. Levy of The Levy Law Firm, Tallahassee, for Petitioner.
George T. Reeves and Edwin B. Browning, Jr. of Davis, Browning & Schnitker, P.A., Madison, and Ken Van Assenderp, Tallahassee, for Respondent.
Robert A. Butterworth, Attorney General, Joseph C. Mellichamp, III, and Eric J. Taylor, Assistant Attorneys General, Tallahassee, for Florida Department of Revenue, Amicus Curiae.
Robert L. Nabors, Virginia Saunders Delegal and Heather J. Melom of Nabors, Giblin & Nickerson, P.A., Tallahassee, and Susan H. Churuti, Clearwater, for Florida Association of Counties and Florida Association of County Attorneys, Amici Curiae.
*246 SHAW, J.
This case is before the Court on remand from the United States Supreme Court for reconsideration of our decision in Dryden v. Madison County, 696 So.2d 728 (Fla.1997), vacated, ___ U.S. ___, 118 S.Ct. 1162, 140 L.Ed.2d 173 (1998). We reaffirm our decision in Dryden.

1. Facts

The facts are set out fully in this Court's initial opinion on review. See Dryden v. Madison County, 696 So.2d 728 (Fla.1997). Madison County in 1989 adopted several ordinances levying special assessments on property located in the county to pay for garbage services, landfill closure, ambulance service, and fire protection. Several years later, the assessments were declared invalid, and Dryden and other residents sought refunds. The trial court found that the county had acted in good faith in levying the 1989 and 1990 assessments and that Dryden was unentitled to a refund for those years. The district court affirmed. We approved the district court decision:
Where an invalid tax scheme discriminates among citizens without a legal basis and bestows no commensurate benefit, a refund may be in order. Department of Revenue v. Kuhnlein, 646 So.2d 717 (Fla. 1994). Otherwise, the tax could constitute an unlawful taking of property in violation of state and federal rights. McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, 496 U.S. 18[, 110 S.Ct. 2238, 110 L.Ed.2d 17] (1990). Where an invalid tax scheme applies across the board and confers a commensurate benefit, on the other hand, "equitable considerations" may preclude a refund. Gulesian v. Dade County School Board, 281 So.2d 325 (Fla.1973).
In the present case, the 1989 and 1990 assessments fall in the latter category. The assessments were non-discriminatory (i.e., they applied across the board to all property owners in the county) and they conferred a commensurate benefit (i.e., they provided for garbage collection and disposal, landfill closure, ambulance service, and fire protection). Further, the county acted in good faith in imposing these assessments. Competent substantial evidence supports the denial of refunds for 1989 and 1990.
Dryden, 696 So.2d at 729-30 (footnotes omitted).
The United States Supreme Court subsequently vacated our decision in Dryden in light of its just-released opinion in Newsweek, Inc. v. Florida Dep't of Revenue, 522 U.S. 442, 118 S.Ct. 904, 139 L.Ed.2d 888 (1998). The decision vacating Dryden was brief and without analysis:
On petition for writ of certiorari to the Supreme Court of Florida. Petition for writ of certiorari granted. Judgment is vacated and the case is remanded to the Supreme Court of Florida for further consideration in light of Newsweek, Inc. v. Florida Department of Revenue, 522 U.S. 442, 118 S.Ct. 904, 139 L.Ed.2d 888 (1998).
Dryden v. Madison County, ___ U.S. ___, 118 S.Ct. 1162, 140 L.Ed.2d 173 (1998). This Court ordered briefing by the parties concerning the effect of Newsweek on our decision in Dryden, and Dryden now contends that Newsweek mandates a refund. We disagree.

2. Newsweek v. Florida Dep't of Revenue

Newsweek is a tax "remedy" case. This Court in Department of Revenue v. Magazine Publishers of America, Inc., 565 So.2d 1304 (1990),[1] declared unconstitutional a statutory scheme that imposed a sales tax on magazines but not newspapers. Relying on this ruling, Newsweek, a magazine, sought a tax refund, claiming that it had been compelled to pay taxes pursuant to the unconstitutional scheme. The trial court did not reach the merits of the claim but rather granted summary judgment against Newsweek. The district court of appeal affirmed. Newsweek, Inc. v. Department of Revenue, 689 So.2d 361 (Fla. 1st DCA 1997). The district court reasoned that Newsweek *247 should have availed itself of the prepayment remedy under section 72.011, Florida Statutes (1987), which allowed a taxpayer to file suit and pay the contested amount into the court registry rather than to the government. 689 So.2d at 363-64
The United States Supreme Court granted certiorari and vacated the district court decision, pointing out that a different statutory provision, section 215.26, Florida Statutes (1987), authorized a postpayment remedy wherein the taxpayer could pay the tax first and file suit later. The federal Court reasoned:
The effect of the District Court of Appeal's decision below, however, was to cut off Newsweek's recourse to § 215.26. While Florida may be free to require taxpayers to litigate first and pay later, due process prevents it from applying this requirement to taxpayers, like Newsweek, who reasonably relied on the apparent availability of a postpayment refund when paying the tax.
Newsweek, 118 S.Ct. at 905. The federal Court concluded that Newsweek was entitled to proceed via the postpayment route and obtain an adjudication on the merits of its refund claim: "Newsweek is entitled to a clear and certain remedy and thus it can use the refund procedures [in section 215.26] to adjudicate the merits of its claim." Id. at 905.

3. Application to Present Case

Newsweek is inapplicable to the present case. The United States Supreme Court in Newsweek never reached the merits of the refund issue but rather focused only on the remedy that must be made available to a taxpayer seeking an adjudication on the merits of a refund claim. Specifically, the federal Court held that a taxpayer cannot be cut off from a remedy, or avenue of redress, upon which the taxpayer has reasonably relied. The taxpayer is entitled to proceed upon that avenue and at some point obtain an adjudicationeither yea or nayon the merits of his or her refund claim.
Until the United States Supreme Court stepped in, Newsweek had never obtained an adjudication on the merits of its refund claim. (As noted above, the trial court had granted summary judgment against Newsweek, and the district court had said that Newsweek was not entitled to seek a refund because Newsweek had failed to comply with the statutory prepayment requirements.) The United States Supreme Court vacated the district court judgment and held that Newsweek was entitled to proceed via the postpayment route and obtain an adjudication on the merits.
The present refund case could not be more differentit is not a tax "remedy" case. In fact, the remedy that Dryden has chosen has never been in issue in these proceedings. Dryden has proceeded via the postpayment route (i.e., he paid the assessments first and then filed suit), andunlike the situation in Newsweekthe government has not asserted and the courts have not held that he is unentitled to do so. Rather, the parties and courts have viewed the availability of the postpayment remedy as a "given" in this case and have focused exclusively on the merits of Dryden's refund claim (i.e., on whether Dryden and other taxpayers are in fact due a refund). This case thus begins precisely where Newsweek left off.
Dryden has pursued his claim to completion at every level. He has obtained an adjudication on the merits from three separate tribunalsthe trial court, the district court (twice), and this Court. He ultimately lost at each stagefair and square.[2] The analysis in Newsweek, which focuses on a taxpayer's remedy for seeking a refund, is inapplicable to this "merits" case. Simply put: The remedy here is not in issue and never has been.
*248 Based on the foregoing we reaffirm our decision in Dryden v. Madison County, 696 So.2d 728 (Fla.1997), in its entirety.
It is so ordered.
HARDING, C.J., ANSTEAD, J., and KOGAN, Senior Justice, concur.
WELLS, J., dissents with an opinion, in which PARIENTE, J., and OVERTON, Senior Justice, concur.
WELLS, J., dissenting.
I dissent because the majority errs in concluding that the United States Supreme Court's vacation of this Court's judgment in this cause and remand to us for further consideration in light of Newsweek, Inc. v. Florida Department of Revenue, 522 U.S. 442, 118 S.Ct. 904, 139 L.Ed.2d 888 (1998), should have no impact upon our decision in this case.
My reading of the Newsweek decision finds two clear statements by the United States Supreme Court which, when applied to this case, require rescinding the remanded judgment and opinion of this court. In the first statement, the Court noted with approval the Florida First District Court of Appeal's acknowledgment of the requirement of McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), that there be a "`meaningful backward-looking relief' when a taxpayer is forced to pay a tax before having an opportunity to establish its unconstitutionality." Newsweek, 118 S.Ct. at 904. In the second statement, the Court held that:
While Florida may be free to require taxpayers to litigate first and pay later, due process prevents it from applying this requirement to taxpayers, like Newsweek, who reasonably relied on the apparent availability of a postpayment refund when paying the tax.
Newsweek is entitled to a clear and certain remedy and thus it can use the refund procedures to adjudicate the merits of its claim.
Newsweek, 118 S.Ct. at 905.
Newsweek reinforces the fact that when the state or a state-authorized taxing unit subjects a taxpayer to an unauthorized payment, McKesson requires either (1) a "predeprivation process" authorizing taxpayers to challenge the validity of a payment prior to making the payment, or (2) postpayment "meaningful relief." If no prepayment procedure exists, as in this case, then postpayment "meaningful relief" must include a refund if the taxpayer has a meritorious claim. It is an inescapable fact that the act of refunding money to the taxpayer is what makes the relief meaningful.
The majority gives the vacation of the judgment an empty meaning by asserting that:
[This] is not a tax "remedy" case.... Dryden has proceeded via the postpayment route.... Rather, the parties and courts have viewed the availability of the postpayment remedy as a "given" in this case and have focused exclusively on the merits of Dryden's refund claim (i.e., on whether Dryden and other taxpayers are in fact due a refund). This case thus begins precisely where Newsweek left off.
Majority op. at 247.
This is a tax remedy case. The fundamental issue before us in this case continues to be the issue framed by the First District when the case was certified to us, which is whether our decision in Gulesian v. Dade County School Board, 281 So.2d 325 (Fla. 1973), is still valid after the Supreme Court's decision in McKesson. The issue in both Gulesian and McKesson was whether taxpayers had remedies available after taxing schemes were found to be invalid.[3] In Gulesian, we held that although a refund to taxpayers *249 would be the normal remedy after a tax was invalidated, an exception was warranted under the facts of Gulesian and thus the refund remedy was not available in that case. In McKesson, the United States Supreme Court held that a postpayment remedy was mandatory in a situation in which no prepayment procedure existed and that remedy had to be a refund or its equivalent. McKesson specifically states:
Had the Florida courts declared the Liquor Tax invalid either because (other than its discriminatory nature) it was beyond the State's power to impose, as was the unapportioned tax in [Atchison, Topeka & Santa Fe R. v. O'Connor, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436 (1912)], or because the taxpayers were absolutely immune from the tax, as were the Indian Tribes in [Ward v. Board of County Commissioners, 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751 (1920); and Carpenter v. Shaw, 280 U.S. 363, 50 S.Ct. 121, 74 L.Ed. 478 (1930)], no corrective action by the State could cure the invalidity of the tax during the contested tax period. The State would have had no choice but to "undo" the unlawful deprivation by refunding the tax previously paid under duress, because allowing the State to "collect these unlawful taxes by coercive means and not incur any obligation to pay them back ... would be in contravention of the Fourteenth Amendment."
McKesson, 496 U.S. at 39, 110 S.Ct. 2238 (emphasis added) (quoting Ward, 253 U.S. at 24, 40 S.Ct. 419).
The Supreme Court made this patent in McKesson by citing to its earlier decision regarding a tax on certain Indian tribe lands in Ward v. Board of County Commissioners, 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751 (1920):
We explained the State's duty to remit the tax as follows:
"To say that the county could collect these unlawful taxes by coercive means and not incur any obligation to pay them back is nothing short of saying that it could take or appropriate the property of these Indian allottees arbitrarily and without due process of law. Of course this would be in contravention of the Fourteenth Amendment, which binds the county as an agency of the State."
McKesson, 496 U.S. at 33-34, 110 S.Ct. 2238 (quoting Ward, 253 U.S. at 24, 40 S.Ct. 419). Applying this rule to the remand of this case requires the conclusion that not only is this a tax remedy case but that the tax remedy must include a refund.
The United States Supreme Court asks us to reconsider this case in light of Newsweek, which reiterates the McKesson due-process requirement that a taxpayer who has only the availability of a postpayment refund, as did Dryden, should receive the "clear and certain remedy" of "meaningful backward-looking relief." In McKesson, the Supreme Court expressly rejected equitable exceptions to the refund requirement. McKesson at 46-47, 110 S.Ct. 2238. In Newsweek, the Court did not mention any good-faith equitable exception. This substantiates my serious reservations as to the continued vitality of Gulesian under any circumstances. I believe the correct answer to the First District's certified question is that the Gulesian exception is not still valid. However, even though the question certified to us by the First District is as to the continued viability of the Gulesian exception after the McKesson decision, we do not have to reach that issue to decide whether refunds are required in this case. Rather, I believe the following from my dissent in this case could be adopted:
Moreover, although neither McKesson II nor Kuhnlein specifically overruled Gulesian, the continuing vitality of Gulesian in light of these decisions is questionable. Nevertheless, even if Gulesian is still good law, I do not believe the very limited exception afforded by Gulesian to be applicable here. The evidence in this case does not establish that the County acted within the "good faith" parameters of Gulesian. In Gulesian, this Court upheld a trial court's ruling that equitable considerations precluded refunds of taxes based on a presumptively valid statute which was later ruled unconstitutional. The Court gave two reasons for its decision: ordering a refund in the small amounts that would be required would impose *250 an intolerable burden on the school board; and the school board acted in good faith in relying on a presumptively valid statute and to impose a refund would compound the school board's fiscal problems. However, the particularly persuasive fact was that the taxing authority relied upon a presumptively valid statute which had been so held by a trial court but later reversed by the appellate court. This point was recognized in Coe v. Broward County, 358 So.2d 214, 215-16 (Fla. 4th DCA 1978), in which the court noted that Gulesian had carved out a very narrow exception to the taxpayer's right to a refund and that good faith was clearly evident in Gulesian because the school board acted at all times in accordance with the law as then interpreted by the courts and enacted by the legislature.
Unlike the taxing authority in Gulesian, the County did not act in reliance on a state statute caught up in a reversed court interpretation as to its constitutionality. Rather, the County failed to comply with the precise statute it relied upon in enacting its ordinances. Although the County drafted its ordinances and levied assessments based upon advice from various sources, a government with the power to exact property from its citizens clearly should be held to a standard that it will know and follow the law. Perhaps those who gave the County the erroneous advice concerning the adoption of the ordinances should have the ultimate responsibility, but those who paid under the threat of the County's power to exact the payment should not be held to have no recourse against the unlawful exaction.
The facts presented in this case are simply so different from what occurred in Gulesian that it is erroneous to apply the good-faith exception of Gulesian. See McKesson II, 496 U.S. at 46-47, 110 S.Ct. 2238 (state's reliance on statute similar to one found unconstitutional several years earlier precluded state's reliance on an equitable justification to avoid affording relief).
Dryden v. Madison County, 696 So.2d at 728, 732-33 (Fla.1997)(Wells, J., dissenting) (citations and footnote omitted). Since this case is so different factually from Gulesian, we could leave to another day the issue of whether a case resembling Gulesian allows for the application of a Gulesian exception to "meaningful relief," including a refund.
In this case, however, we plainly are in error if we continue to ignore, as the majority does, just how patently discriminatory and inequitable the refusal to refund the payment is in this case. The Madison County assessments were treated identically to ad valorem taxes insofar as collection was concerned. No prepayment mechanism existed for challenging the assessments. If assessments were not paid, liens attached to the property owners' real property, and upon becoming delinquent, the amount of the liens accrued interest at eighteen percent per annum. Nonpayment resulted in the sale of tax assessment certificates.
Precisely contrary to the majority's assertion in its footnote 2, the assessments did not apply across the board to all property owners in this case. Approximately one-half of the property owners in Madison County did not pay the assessments, and liens attached to their properties. Subsequently, the County canceled the liens by purchasing all assessment certificates sold to third parties for nonpayment. In reality, the property owners who did not pay, and thus failed to comply with the law, never had to pay. On the other hand, the property owners who complied with the law, which was later found to be invalid, were the only property owners who had to pay.
Finally, I point out that Judge Davis, in her concurring opinion in the First District's Newsweek decision, cited Dryden v. Madison County, 672 So.2d 840, 843 (Fla. 1st DCA 1996), as a basis for the First District's refusal to provide a refund to Newsweek. Newsweek, Inc. v. Department of Revenue, 689 So.2d 361, 364 (Fla. 1st DCA 1997) (Davis, J., concurring). Judge Davis pointed to the First District's reasoning in Dryden that Gulesian equitable considerations were a basis for denying refunds to Dryden and suggested that this same reasoning should support the denial of refunds in Newsweek. Id. Not only did the United States Supreme *251 Court refuse to accept the Dryden analogy as a reason for denying "meaningful postpayment relief" in Newsweek, but the Court also vacated our judgment in Dryden on the basis of its reversal of the First District's Newsweek decision.
PARIENTE, J., and OVERTON, Senior Justice, concur.
NOTES
[1] This decision was subsequently vacated and remanded and then reaffirmed. See Department of Revenue v. Magazine Publishers of America, Inc., 565 So.2d 1304 (1990), vacated sub nom., Miami Herald Publ'g Co. v. Department of Revenue, 499 U.S. 972, 111 S.Ct. 1614, 113 L.Ed.2d 712 (1991), reaffirmed, 604 So.2d 459 (Fla.1992).
[2] As noted above, this Court in Dryden held that although the special assessments were levied pursuant to a technically invalid ordinance, Dryden was not entitled to a refund for good reason: (1) the assessments were nondiscriminatory, i.e., they applied across the board to all property owners; (2) the assessments conferred a commensurate benefit on the taxpayers, i.e., in return for the assessments, the taxpayers were provided with garbage collection and disposal, landfill closure, ambulance service, and fire protection; and (3) the assessments were enacted in good faith.
[3] In McKesson, the only reason a refund was not specifically ordered was that the challenged liquor tax was not found to be invalid in its entirety but rather was invalid only insofar as it operated in a manner that discriminated against interstate commerce. Therefore, the Supreme Court allowed either a refund or other retroactive relief that would cure the discrimination. McKesson, 496 U.S. at 51, 110 S.Ct. 2238. In this case, the assessments were held to be null and void based on the county's failure to substantially comply with the statutory authority under which it purported to act. See Madison County v. Foxx, 636 So.2d 39, 48 (Fla. 1st DCA 1994).