693 So.2d 48 (1997)
Truman J. COSTELLO, P.A., and Robert N. Reynolds, P.A., Appellants,
v.
The CITY OF CAPE CORAL, Florida, a municipal corporation existing under the laws of the State of Florida, Appellee.
No. 96-00681.
District Court of Appeal of Florida, Second District.
March 5, 1997.
Rehearing Denied May 7, 1997.
*49 Truman J. Costello of Costello, Sims & Royston, Fort Myers; and Robert N. Reynolds of Robert N. Reynolds, P.A., Winter Park, for Appellants.
Gerald W. Pierce of Henderson, Franklin, Starnes & Holt, P.A., Fort Myers, for Appellee.
BLUE, Judge.
Truman J. Costello, P.A., and Robert N. Reynolds, P.A., (Costello/Reynolds) appeal the final judgment entered in their action claiming attorney's fees from the City of Cape Coral (City) based on the "common fund doctrine." Because the trial court erred in finding as a matter of law that there was no fund to support the claim under the common fund doctrine, we reverse the final judgment for the City and the order awarding fees to the City based on section 57.105(1), Florida Statutes (1993).
The common fund doctrine, in its simplest terms, provides that when litigation contributes substantial benefits to persons not party to the litigation and a fund is established from which the benefits will be paid, the persons responsible for gaining the benefit should be entitled to costs and attorney's fees paid from the fund. The common fund doctrine found its way into our jurisprudence as a result of a trilogy of cases from the United States Supreme Court. The first of these cases is Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1881), which gave birth to the common fund doctrine. In Greenough, one of a number of bondholders brought an action against the trustees for the bondholders claiming improprieties. As a result of the litigation, money was recovered that benefited all of the bondholders in the same class as the plaintiff. The successful litigator made a claim for costs and attorney's fees that the individual bondholder, as plaintiff, had incurred. Because the individual bondholder had, through his efforts, created a fund which benefited others who had incurred no expense, the Supreme Court ruled that it was equitable for the fund to be charged with the costs and attorney's fees incurred in creating the fund.
The second case in the development of the doctrine is Central Railroad & Banking Co. of Georgia v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885). This case approved the decision in Trustees v. Greenough and extended the principle to allow attorneys to *50 claim fees in their own right rather than through the client for whom a common fund was created.
The third case, and the one which appears to have firmly established the common fund doctrine, is Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). This case recognized that courts with equity jurisdiction have the right and the power to require those benefited to share in the costs of the litigation which benefited them. The following language from Sprague is appropriate to the question we are required to decide:
Whether one professes to sue representatively or formally makes a fund available for others may, of course, be a relevant circumstance in making the fund liable for his costs in producing it. But when such a fund is for all practical purposes created for the benefit of others, the formalities of the litigationthe absence of an avowed class suit or the creation of a fund, as it were, through stare decisis rather than through a decreehardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation. As in much else that pertains to equitable jurisdiction, individualization in the exercise of a discretionary power will alone retain equity as a living system and save it from sterility. In the actual exercise of the power to award costs `as between solicitor and client' all sorts of practical distinctions have been taken in distributing the costs of the burden of the litigation. And so, the circumstances under which the petitioner enforced the fiduciary obligation of the Ticonic Bankthe relation of its vindication to beneficiaries similarly situated but not actually before the court, as well as the interest of the common creditors where the funds of the bank are not sufficient to pay them in full, and doubtless other considerationsmust enter into the ultimate judgment of the District Court as to the fairness of making an award, or the extent of such award, `as between solicitor and client' in this case. In any event such allowances are appropriate only in exceptional cases and for dominating reasons of justice. But here we are concerned solely with the power to entertain such a petition. 307 U.S. at 166-67, 59 S.Ct. at 780 (footnotes omitted).
The doctrine was first recognized in Florida in Tenney v. City of Miami Beach, 152 Fla. 126, 11 So.2d 188 (Fla.1942). In Tenney, Miami Beach had imposed special assessment liens on lots of 232 owners abutting Collins Avenue. These liens were attacked by Tenney as being illegal and, therefore, void. He successfully defeated the liens and then petitioned the court to be allowed attorney's fees from each of the persons benefited by the litigation. The trial court first ordered fees to be paid by each of the benefited property owners, but later entered an amended decree finding it had no jurisdiction over those property owners who had not contracted with the attorney who had brought the litigation. The Florida Supreme Court reversed the trial court's order which found no jurisdiction and reinstated the decree requiring all property owners to share in the costs and fees. Support for this decision was found in the United States Supreme Court cases set forth above. In requiring the fees to be paid, the court had this to say:
The hard and fast rule of the common law requiring the parties to a cause to be formally before the court has never been a part of the chancery practice when nothing more is involved than a decree distributing the costs of the litigation. In equity, this is often a practical matter as much as a legal one and all sorts of distinctions have been observed. Daniel's Chancery Pleading and Practice, 2nd Ed., 1434-1440; 2 Street Federal Equity Practice, paragraphs 2033 to 2048. In the case at bar, Tenney sued as the representative of more than 170 of the 232 lot owners affected. His suit resulted in liberating their lands from void liens imposed by the City. To hold that those likewise affected as Tenney cannot be required to bear their portion of the burden is to admit that equity practice is effete and has not kept pace with the factual situations that precipitate litigation. It is not essential that equity travel on the back of an ass to preserve due process. If those who administer it insist that it travel in this fashion, litigants who travel by the *51 motor route will find other means to dispense equity.
In this pronouncement, we are supported by Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157; Central R. & Banking Co. v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915; and Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184. These were class suits in which trust funds were brought into the court by a nominal party but in which all of the class were entitled to participate. It was not questioned that all in the class had their rights adjudicated by the litigation. The court held that all should help bear the burden of the litigation on the theory that their rights were adjudicated and that it would be unconscionable not to require them to help. We think these cases conclude the case at bar. The gist of the matter is one of equity and the judgment is not assailed by any one affected by it.
152 Fla. at 130, 11 So.2d at 189.
The Florida Supreme Court again approved the common fund doctrine in Universal Construction Co. v. Gore, 51 So.2d 429 (Fla.1950). This court has also recognized the viability of the common fund doctrine. See Fidelity & Casualty Co. of New York v. O'Shea, 397 So.2d 1196 (Fla. 2d DCA 1981); and State, Dep't of Citrus v. Griffin, 332 So.2d 54 (Fla. 2d DCA 1976). Although each of these cases determined that payment of attorney's fees was not appropriate, they do recognize the doctrine.
The common fund doctrine has been criticized,[1] but it continues to be a rule in this state. Perhaps the availability to litigants of class action suits has supplanted the use of this doctrine and made it unnecessary. However, at this point, no court of this state has ruled that it is not an available remedy.
The action before us follows prior litigation involving a challenge of special assessments sought to be imposed on landowner taxpayers within the city of Cape Coral. Costello/Reynolds represented fourteen landowners who had been assessed for having irrigation water available to their property. As a result of the litigation, the City agreed to settle the fourteen suits by reducing the assessments by approximately 50% and at the same time, by council action, reduced by 50% two hundred plus other landowners similarly situated. In order to accomplish the reduction in assessment, the City transferred $1.9 million from a separate account to be paid to the bondholders[2] to make-up for the shortfall. Based on the record, each of the property owners benefited from this $1.9 million either by having their assessment reduced or, if they had paid the assessment, by being entitled to a refund. Costello/Reynolds seek to have costs and attorney's fees paid to them from this $1.9 million fund. It is unclear from the pleadings and the unresolved issues whether they seek to merely have the amount incurred by their fourteen clients reimbursed or whether they seek additional attorney's fees as a result of this substantial benefit bestowed upon the nonparties to the prior action.
Both sides filed motions for summary judgment. After a hearing, the trial court denied Costello/Reynolds's motion and granted the City's motion. In granting the summary judgment in favor of the City, the court found that there was no "fund" and therefore the common fund doctrine was unavailable. The City contends that the $1.9 million was merely a bookkeeping entry for the benefit of the bondholders, rather than a fund for the property owners.
Based upon the case law that we have examined, we conclude that where there is an ascertainable sum of money which benefits an ascertainable group of individuals, that is sufficient to establish a common fund. Such an ascertainable sum and class are present in the case before us. A common fund doctrine claim does not require that there be a "cigar box full of cash" representing the fund. Because the trial court's sole basis for the granting of the summary judgment was the lack of any fund, and because we conclude *52 there was a fund, we reverse the granting of summary judgment and remand for further proceedings.
Having concluded that the trial court improperly entered the summary judgment, it follows that the determination to award the City attorney's fees under section 57.105(1) was also error and, accordingly, we reverse that order.
As we noted above, there remain questions of fact that must be resolved before liability might be determined in this matter. Having concluded there is a fund which would give rise to the common fund doctrine, we suggest that the trial court look to this court's opinion in Fidelity & Casualty Company of New York, as well as the quoted language from Sprague, in further proceedings. As in Sprague, we are making no determination as to Costello/Reynolds's entitlement to recovery based upon the common fund doctrine, but only that there is a sufficient basis for the trial court to entertain such a petition. Accordingly, although we affirm the denial of Costello/Reynolds's motion for summary judgment, we reverse the final summary judgment in favor of the City and the finding that the City was entitled to attorney's fees.
Reversed and remanded for further proceedings.
FRANK, A.C.J., concurs.
PARKER, J., dissents with opinion.
PARKER, Judge, dissenting.
I respectfully dissent. I conclude the trial court was correct in finding that there was no common fund created by the City of Cape Coral. In my opinion, the City has not created a common fund subject to an attorney's fee award by transferring money from another city account to make up for a shortfall in anticipated tax revenues.
NOTES
[1] John P. Dawson, Lawyers and Involuntary Clients: Attorney Fees From Funds, 87 Harv. L.Rev. 1597 (1974).
[2] These are the holders of the bonds issued to finance the utility system that includes the irrigation water at issue in the prior litigation.