985 So.2d 564 (2008)
Randolph NELSON and Mary L. Nelson, his wife; John Probert and Dolores Probert, his wife, individually and on behalf of a class of all others similarly situated, Petitioners,
v.
WAKULLA COUNTY, Florida, a political subdivision of the State of Florida, Respondent.
No. 1D07-3423.
District Court of Appeal of Florida, First District.
April 21, 2008.
Rehearing Denied July 11, 2008.
*567 Marsha L. Lyons, William L. Gerlin, and Douglas S. Lyons of Lyons & Farrar, P.A., Tallahassee; William C. Owen, Tallahassee; and Samuel R. Neel, III, Tallahassee, for Petitioners.
Stephen E. Mitchell and Ronald A. Mowrey of Mowrey & Mitchell, P.A., Tallahassee, for Respondent.
WOLF, J.
Petitioners, Randolph Nelson and Mary L. Nelson, and John Probert and Dolores Probert, the plaintiffs in a class action suit, and respondent, Wakulla County, the defendant in the class action suit, both challenge an order of the trial court denying a proposed settlement agreement submitted by the parties. Petitioners and respondent, jointly the parties, raise concerns regarding the following three areas in which the trial court denied the proposed settlement: 1) the nature and method of disbursements from the common fund; 2) attorneys' fees and costs; and 3) notices provided to the prospective members of the class. We share some of the parties' concerns, grant the petition in part, and remand to the trial court for the entry of an order allowing the parties to propose a settlement agreement consistent with the dictates of this opinion.
Petitioners challenged the constitutionality of Wakulla County Ordinance 85-6 and sought a refund of the special assessments from respondent. See Nelson v. Wakulla County, 905 So.2d 936 (Fla. 1st DCA 2005). The ordinance established the Wakulla County Emergency Medical Services Benefit District and allowed the County to levy "special assessments" on all improved real property (commercial, residential, and agricultural) in the same manner as ad valorem taxes, setting an assessment rate of $35 per parcel, beginning January 1, 1996. Respondent imposed and levied such "special assessments" for the tax years 1996-2002 or six years.
The trial court declared the ordinance unconstitutional, but refused petitioners' request for a refund. Following an appeal of that order, the matter was remanded to the trial court for a determination of whether the equitable considerations set out in Gulesian v. Dade County School Board, 281 So.2d 325 (Fla.1973), precluded such an award.
On May 26, 2006, the trial court rendered an Order Determining and Certifying Class finding that a class existed under Florida Rule of Civil Procedure 1.220(b)(3). The class included all property owners in Wakulla County who had paid the yearly $35 special assessment levied by Wakulla County upon improved real estate for *568 Emergency Medical Services and who wished to receive a refund of any payments of such assessment that were actually paid on or after March 31, 1999.
Respondent appealed that trial court order, but on August 15, 2006, filed a motion to relinquish jurisdiction; the motion was granted on August 18, 2006, for the trial court to consider the settlement agreement reached by the parties.
The parties filed several proposed settlement agreements which were rejected by the trial court. The revised settlement agreement at issue before this court provided the following: 1) a settlement fund of $715,000.00 or 51.8% of the assessments of $1,379,525 paid and collected after March 31, 1999; 2) that the gross recovery per taxpayer would be $18.14 or 51.8% of the $35 assessment and after the estimated $365,000 was dispensed for attorneys' fees and costs, the minimum proposed refund would be $8.88 per assessment per year; and 3) that the settlement fund would be reduced by the total amount of the allowable claims of those opting out of the class.
The proposed settlement agreement further provided that the County would not be required to deposit the full amount into the fund but would make disbursements as follows: 1) if a claimant was the current owner of the property assessed, he or she would receive a credit for the refund amount against ad valorem taxes assessed on the property for tax year 2007-08, which assessments would be billed in November 2007; any amount credited against a claimant's future ad valorem tax assessment bill would be credited against the settlement fund; and 2) if a claimant was not the current and projected owner of the subject parcel, a refund would be distributed to the claimant at his or her address as indicated on the proof of claim form. Such distribution would also be made to a claimant who was a current owner but who was reasonably projected not to be exposed to ad valorem tax obligations because of homestead or other exemptions.
Following the joint motion presentation, the trial court entered an Order With Respect to Order Regarding Joint Motion, and Forms in Class Action, attaching an order that it intended to enter if the parties failed to object. This was followed by an Amended Order With Respect to Order Regarding Joint Motion, and Forms in Class Action on April 5, 2007, which amended certain terms of the settlement agreement. Both parties subsequently filed objections to the trial court's amended order.
Specifically, both parties objected to paragraph 12, under OPT-OUT, sub-paragraph 5, which provided:
The total amount of potentially refundable special assessments you paid (before any deduction for attorneys' fees and costs) will be taken out and removed from the money available for settlement so that your's [sic] will not and cannot be used in the lawsuit or its settlement.
The parties asserted that if the full amount were removed, there would be insufficient funds to pay those desiring to take advantage of the class action settlement. They suggested this problem could be fixed by diluting the fund after any deduction for attorneys' fees and costs.
The court's proposed notice also contained language objected to by the petitioners which described the lawsuit as "a suit principally by taxpayers, as a class, against themselves for a refund to be paid by themselves as taxpayers of the county.. . ."
Subsequently, on May 3, 2007, the parties filed an Addendum to the Settlement Agreement and Release. In the addendum, that parties agreed:

*569 1) The initial settlement fund of $715,000 would be reduced by each and every class member who elects to opt-out of participation in the class by the sum of $18.14 for each assessment year that such opt-out member participated in paying the challenged assessments.
2) The petitioners and County agreed that any unclaimed settlement funds could be utilized to the extent necessary to generate a minimum refund amount of $8.88 per assessment per year for those filing a refund claim.
3) If more than 1000 full four-year assessment taxpayers opt-out of the class, the County may rescind the agreement and continue with litigation.
On June 5, 2007, the trial court rendered an Order Denying Preliminary Approval of All Proposed Settlement Agreements, Notices and Forms. The trial court's order found that the parties entered into an improper settlement. After considering several proposed settlements, the court specifically found that:
Once again, as the court was compelled to find in the October 2006 order, what the parties continue to propose misses the common fund principles mark by a wide margin, is beyond any reasonable range of fairness, reasonableness and adequacy permitting preliminary approval, and the court cannot give preliminary approval to what is still being proposed.
The trial court took issue with the following eight aspects of the settlement proposal:
1) It established a "common fund" that was of a hypothetical construct which did not have a fixed monetary recovery amount;
2) It provided, as an integral and binding part of the agreement, the fees and costs of litigation being paid;
3) It provided that the paying party pledges to establish a fund, "give security," to pay all obligations to the class without there being a fund separately deposited or escrowed for an actual existing fund, agreeing that the obligation will be paid by way of future credits, except for the allowed attorney fees and costs;
4) It provided a "clear sailing" provision that the paying party would not object to the amount of fees and costs negotiated and agreed upon by the parties as being reasonable and awardable;
5) It provided that fees and costs are an integral part of the settlement, so that it could only be approved as proposed;
6) It proposed notices and forms to absent potential members of the (b)(3) class containing scant or minimal notice and information about the nature and character of the action itself, its details, and the rights of the class members;
7) It provided notices and forms which make the settlement proposal appear to be a "done deal," with the only option available to the recipient being to accept it and file a claim; and
8) It also reserved to class counsel the right to appeal the entire settlement, instead of just the order awarding fees, which is independently appealable.
The trial court's concern that the settlement agreement was not fair, reasonable, and adequate can be broken into the following three general categories: 1) the structure of the "common fund;" 2) the provisions for attorneys' fees and costs; and 3) the notice and forms to absent potential members of the class, containing information about the nature and character of the action itself, its details, and the rights of class members. The first contention related to both the nature of the fund as well as disbursements from the common fund. The parties' challenge addresses *570 these concerns, as well as one general area pertaining to the court's alleged failure to take into account the appropriate factors in disapproving settlement.

General Consideration
In a settlement agreement, the trial court must review the agreement and assure itself that the agreement is "fair, reasonable, and adequate." § 23.161[1], Moore's Federal Practice; see also Barnhill v. Fla. Microsoft Anti-Trust Litigation, 905 So.2d 195, 200 (Fla. 3d DCA 2005) (holding that settlement agreement reached in class action suit was fair, reasonable, and adequate); Myers v. State, 866 So.2d 103, 104 (Fla. 1st DCA 2004) (citing Federal Rule of Civil Procedure 23(e)(2), which provides that the court may approve a settlement that would bind class members "only after a hearing and on finding that the settlement is fair, reasonable, and adequate.").
A court considers several components of a settlement agreement in determining whether it is fair, reasonable, and adequate. These components include the following: 1) the likelihood of success at trial; 2) the range of possible recovery; 3) the point over or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; 4) the complexity, expense, and duration of the litigation; 5) the substance and amount of opposition to the settlement; and 6) the stage of the proceedings at which the settlement was achieved. See Myers, 866 So.2d at 104 (citing Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir.1984)). The trial court must also consider the reasonableness of attorneys' fees and costs and the adequacy of notice to the class. See Piambino v. Bailey, 610 F.2d 1306, 1328 (5th Cir.1980); Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).
Petitioners argue that the trial court does not mention any of the factors generally considered vital in determining whether a settlement is fair, adequate, and reasonable. We reject this general argument. While the focus of the order on appeal is the appropriateness of the common fund, attorneys' fees and costs, and notice, the trial court appears to have considered the six factors in Myers, 866 So.2d at 103. Specifically, the trial court expressly found in an earlier order that the attorneys' fees seemed high and that this case was not complex.

Common Fund
In this case, the trial court found two aspects of the parties' fund disconcerting. First, the trial court found the parties' agreement created a "settlement of conditional value," where the common fund was hypothetical and immutable. Second, the trial court expressed concern because there was no actual fund of money separately deposited or escrowed for an actual existing fund; the settlement would be satisfied predominantly by way of future credits, instead of cash (except for attorneys' fees and costs).
The common fund doctrine, in its simplest terms, provides that when litigation contributes substantial benefits to persons not party to the litigation and a fund is established from which the benefits will be paid, the persons responsible for gaining the benefit should be entitled to costs and attorney's fees paid from the fund.
Costello, P.A. v. City of Cape Coral, 693 So.2d 48, 49 (Fla. 2d DCA 1997). "Under regular common fund procedure, the parties settle for the total amount of the common fund and shift the fund to the court's supervision." Staton v. Boeing Co., 327 F.3d 938, 969 (9th Cir.2003). The common fund provided for in this settlement was a "reversionary" fund, where *571 any unclaimed amounts would revert to the defendant, Wakulla County. See Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1292 (11th Cir.1999). In finding that the characteristics of the parties' settlement were problematic, the trial court specifically relied on Strong v. Bell-South Telecomms., Inc., 173 F.R.D. 167 (W.D.La.1997) (Strong I), aff'd, 137 F.3d 844 (5th Cir.1998) (Strong II).
In Strong v. BellSouth, the company's customers claimed they were duped into paying for an inside wire service maintenance plan that they neither requested nor needed. Strong I, 173 F.R.D. at 168; Strong II, 137 F.3d at 847. After a trial before a magistrate resulted in a hung jury, the parties reached a global settlement. Strong I, 173 F.R.D. at 169. The agreement provided for the creation of a $64 million "common fund" to pay the credits requested by the class members, and it provided that BellSouth would pay a maximum of $6 million directly to plaintiffs' counsel for attorneys' fees. Strong II, 137 F.3d at 848.
The federal district court voiced concern that the $64 million "common fund" figure was illusory. Strong I, 173 F.R.D. at 172. The $64 million figure represented the potential maximum value of the settlement if all class members that were eligible for credit returned a claim. Id. However, the actual credit requests submitted were only around $1.7 million, which the federal district court adjusted to $2 million in consideration of intangible benefits to the class. Id.
The Fifth Circuit, in Strong II, affirmed the finding in Strong I. It also found that the $64 million "common fund" figure assigned by plaintiffs' counsel was "phantom," likening it to settlements providing class members with coupons or certificates where the true value of the award was less than its face value because recovery was based on credits which would be awarded only to class members who did not want to continue under the plan and met the eligibility requirements. Strong II, 137 F.3d at 852. The court in Strong II stated:
Because of the absence of any fund and because the value of the settlement was contingent on class members' desire to continue the plan as well as their eligibility for the credit, we reject the contention of plaintiffs' counsel that the district court abused its discretion by not basing the attorneys' fee award on the $64 million "common fund" value.
Id.
Thus, Strong I and II hold that a trial court does not abuse its discretion in basing attorneys' fees on the actual value of benefits serviced to the class. Id. Contrary to the trial court's belief, the case does not stand for the proposition that "funds of conditional values" or an absence of an actual fund is prohibited by law.
Like Strong I and II, the attorneys' assertion that they are providing a benefit of $715,000.00 is a hypothetical situation; the $715,000.00 represents the potential maximum value of the settlement if all class members that are eligible for a credit returned a claim. See Strong I, 173 F.R.D. at 172. Strong I and II, however, do not preclude the settlements from being organized in this fashion. Strong II stands only for the proposition that it was not an abuse of discretion to consider only the benefits secured to the class when determining the appropriateness of attorneys' fees. 137 F.3d at 852. Thus, to the extent that the trial court found that this "common fund" is phantom, this conclusion serves only to justify a calculation of attorneys' fees based solely on the actual amount benefitting the class.
The trial court's second concern about the common fund in this case is the *572 lack of an actual fund of money separately deposited or escrowed, giving "security" to pay all potential obligations to the class. The trial court noted that the obligation to pay would be primarily satisfied by way of future credits, and only the attorneys would receive cash. To that end, this situation is less like Strong I and II and more like Waters, 190 F.3d at 1292.
In Waters, the settlement agreement also provided a reversionary fund where any unclaimed amounts would revert to the defendant. Id. at 1292. The parties reached a settlement of $40 million, the fund consisting in part of cash payments and in part of promissory notes. Id. The "settlement fund" was defined in the agreement as "the sum of the cash and aggregate initial principal amount of the Master Promissory Note to be delivered to the Settlement Administrator pursuant to § 2.2 of this Stipulation." Id. at n. 2. Section 2.2 provided: "Defendants shall cause [defendant] to deposit the Settlement Fund in the amount of $40,000,000 by delivery actually made to the Settlement Administrator, contemporaneously with the entry of an order by the United States District Court for the Southern District of Florida preliminarily approving this Stipulation." Id.
In Waters, 190 F.3d at 1292, the court was not troubled by the creation of the settlement fund via a Master Promissory Note. Where there is an ascertainable sum of money which benefits an ascertainable group of individuals, that is sufficient to establish a "common fund" from which attorneys' fees can be paid, and "[a] common fund doctrine claim does not require that there be a `cigar box full of cash' representing the fund." Costello, P.A., 693 So.2d at 51 (reversing where trial court granted summary judgment on the basis that there was no common fund, but finding, instead, that where the city transferred $1.9 million from a separate account to either have assessments reduced or if already paid, refunded, a common fund did exist).
Additionally, the trial court's concern that the agreement failed to give security to pay all obligations and agreed, instead, that the obligation would be paid by way of future credits, is unjustified in this case. "Where an invalid tax scheme applies across the board and confers a commensurate benefit, on the other hand, `equitable considerations' may preclude a refund." Dryden v. Madison County, 727 So.2d 245, 246 (Fla.1999). Practically, a government can pay the residents of Wakulla County only by the taxes it will collect in the following year; thus, refunds by way of credit, where backed by the government, seem appropriate. Thus, if equitable considerations can be used to preclude a refund, they should be used in determining how a refund is effectuated in cases involving a governmental defendant. Dryden, 727 So.2d at 246; see also Cabana v. Littler, 1990 WL 1243738 (R.I.Super.1990) (considering, in a case involving the assessment and potential refund of an illegal tax, the city's total budget and the effect of a refund on the city's financial stability if such was granted).
The parties also took issue with the trial court's insistence on diluting the settlement fund by the pro-rata sum attributable to the person who elected to opt out of the settlement.
Specifically, the trial court asserted:
[C]ounsel intended their use of their language "allowable claims" to mean only what would be an allowed claim or net claim, as if awarded fees and costs had been deducted. In other words, it was their plan, intent and interpretation that the 50¢ on the dollar claims of those who opted out, above what would be an allowed or net claim if they stayed in, *573 would nevertheless still remain to be included in their 50¢ on the dollar hypothetical fund total for the awarding and paying of their attorney's fees and costs. Obviously, this was contrary to the court order and its clear intent.
As previously noted, the settlement agreement between the parties is anchored upon what is commonly referred to as a "reversionary" settlement fund. See Waters, 190 F.3d at 1292. In light of the principles governing these types of common funds, we agree with the trial court that the settlement fund must be diluted by the pro-rata sum attributable to each person who elects to opt out of the settlement. Further, the funds that revert to the County cannot be used to generate a minimum refund to each member in the class action suit. Only those class action members not opting out, and thus benefitting from this litigation, should be responsible for the attorneys' fees and costs the trial court determines is fair. Costello, P.A., 693 So.2d at 49. Further, by requiring the settlement fund to be reduced as such, the trial court can better determine the true value of benefits bestowed upon the class. See Strong II, 137 F.3d at 852. The court may then consider this amount in its determination of a reasonable attorneys' fee. Id.

Attorneys' Fees and Costs
Secondly, to fully discharge its duty to review and approve class action settlement agreements, a court must assess the reasonableness of the attorneys' fees. See Piambino, 610 F.2d at 1328. The purpose of this requirement is to protect the nonparty members of the class from unjust or unfair settlements affecting their rights and to minimize conflicts that may arise between the attorney and the class, named plaintiffs and absentees, and various subclasses. Id. at 1327-28. Moreover, the court's examination of attorneys' fees guards against the public perception that attorneys exploit the class action device to obtain large fees at the expense of the class. See Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 801 (3d Cir.1995).
In Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), overruled on other grounds by, Blanchard v. Bergeron, 489 U.S. 87, 92, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), the Fifth Circuit enunciated factors for determining the reasonableness of attorneys' fees in class actions. These factors include the following: 1) the time and labor involved; 2) the novelty and difficulty of the questions; 3) the skill required to perform the legal service properly; 4) the preclusion of other employment; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or the circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. Johnson, 488 F.2d at 717-19. The Fifth Circuit in Piambino added two other factors: 1) the difficulty of the case and 2) the uncertainty of discovery. 610 F.2d at 1306.
Additionally, a review of the time and labor required is a "necessary ingredient" to an evaluation of the requested attorneys' fee. Johnson, 488 F.2d at 717. "Second, the court should consider the requested fee in light of the benefits conferred upon the class." Strong I, 173 F.R.D. at 172 (emphasis added).
In this case, the trial court considered the parties' approach to attorneys' fees and costs problematic for the following four reasons: 1) it provided as an integral *574 and binding part of the agreement the fees and costs of litigation being paid; 2) it provided a "clear sailing" provision, indicating the paying party will not object to the amount of fees negotiated and agreed upon by the parties; 3) it was structured to include fees and costs so that it could be approved only as proposed; and 4) it provided for reserving to class counsel the right to appeal approval itself instead of just the order awarding fees, which is independently appealable.
In Staton, 327 F.3d at 969-72, the Ninth Circuit asserted:
The parties' all-or-nothing approach imposes pressure to approve otherwise acceptable and desirable settlements in spite of built-in attorneys' fees provisions. While this same dynamic may exist where fees can be justified on a statutory fee basis, the more precise lodestar standards for adjudging the reasonableness of such fees, summarized above, make the influence of such pressure much less forceful.
We hold, therefore, that in a class action involving both a statutory fee-shifting provision and an actual or putative common fund, the parties may negotiate and settle the amount of statutory fees along with the merits of the case, as permitted by Evans. In the course of judicial review, the amount of such attorneys' fees can be approved if they meet the reasonableness standard when measured against statutory fee principles. Alternatively, the parties may negotiate and agree to the value of a common fund (which will ordinarily include an amount representing an estimated hypothetical award of statutory fees) and provide that, subsequently, class counsel will apply to the court for an award from the fund, using common fund fee principles. In those circumstances, the agreement as a whole does not stand or fall on the amount of fees. Instead, after the court determines the reasonable amount of attorneys' fees, all the remaining value of the fund belongs to the class rather than reverting to the defendant.
(Emphasis added).
As such, in order to find a settlement agreement reasonable, the trial court, in Staton, stated that the provisions should have allowed the court to uphold the settlement on the merits, while providing that class counsel would later apply to the court for an award from the fund. 327 F.3d at 969-72.
In this case, the proposed settlement agreement from March 7, 2007, specified:
The litigation and settlement costs and attorneys' fees for class counsel are to be determined by the Court upon proper motion or application but an estimate as to a maxim for such expenditures is necessary in order to determine what the class member might expect from the settlement if such attorneys' fees and costs are approved and allowed at the final hearing.
The parties agreed that the maximum attorneys' fee would be $335,000.00 and that the costs of litigation and settlement would be about $30,000.
Pursuant to Kuhnlein v. Department of Revenue, 662 So.2d 309 (Fla.1995), the determination of attorneys' fees should be made based on a reasonable "lodestar" method. The parties in this case are willing to submit their request for attorneys' fees to a special master. In this respect, the parties provided:
In the event settlement is finally approved and the ultimate "lodestar" value of services of Plaintiffs' and Class Members [sic] counsel is appreciably diminished by such process, Class Counsel reserves the right to appeal the Final *575 Judgment Approving Class Action Settlement and to seek the application of an appropriate "multiplier" of the determined "lodestar" amount for final determination of the reasonableness of their requested fees.
The trial court expressed concern that the parties, based on attorneys' fees, reserved a right to appeal any judgment of final approval itself, instead of just appealing the order awarding fees, which can be independently appealed. By making attorneys' fees and costs a determinative feature of the settlement, we agree with the trial court that the parties created an improper "package deal." At the very least, reasonable people can differ as to its propriety, as this provision focuses on ensuring that a desirable amount of money be paid to the attorneys of the case. See Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980) (explaining that if reasonable people could differ as to the propriety of the court's ruling, then the abuse of discretion standard has not been met.). We uphold the trial court's determination as to attorneys' fees on this point.
We also share the trial court's concern regarding the "clear sailing" provision. "In general, a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling." Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 520 n. 1 (1st Cir.1991). Such an agreement is present in the proposed Settlement Agreement and Release where the parties agree that "in no event shall the determination of the `lodestar' amount or the application of any such `multiplier' operate to expand or enhance such aggregate attorney's fees beyond $335,000.00."
Discussing the issue of clear sailing agreements, the court in Waters explained:
[C]lear sailing agreements have been the subject of some controversy in the class action arena. In Malchman v. Davis, 761 F.2d 893 (2d Cir.1985) . . . , the court upheld an attorneys' fee award from a settlement agreement that contained a clear sailing clause. The writing judge noted that while the district court judge should always be the ultimate determiner of the fee award, "where ... the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems . . . that an agreement `not to oppose' an application for fees up to a point is essential to the completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged." Id. at 905 n. 5. In contrast, a concurring panel member noted that clear sailing agreements had "adverse effects" in that they take away the advantages of the adversarial process and create the likelihood that plaintiff counsel will negotiate away something of value to the class in order to procure the defendant's agreement not to challenge the fee award. Id. at 907-08 (Newman, J., concurring). Significantly, the district court here made a factual finding that there had not been any collusion among the parties.
Waters, 190 F.3d at 1293 n. 4. The court in Waters also cited to other courts which were not as suspicious of clear sailing agreements reached after arms-length negotiations. Specifically, the court referenced Skelton v. General Motors Corp., 860 F.2d 250, 259-60 (7th Cir.1988) (noting that a settlement agreement is a contract and when a party "accepted the benefits of the contract ... [h]e cannot obtain the quid of the settlement agreement and *576 avoid the quo of foregoing his right to appeal."). Id. Thus, although clear sailing agreements have attracted considerable debate, they do not render a settlement agreement per se invalid. Instead, case law provides that where there is a clear sailing agreement, "rather than merely rubber-stamping the request, the court should scrutinize it to ensure that the fees awarded are fair and reasonable." Lubitz v. DaimlerChrysler Corp., 2006 WL 3780789 (N.J.Super.L.2006) (citing Weinberger, 925 F.2d at 519). We, therefore, provide that, on remand, the trial court should have broad discretion to determine whether the fees requested in this case are fair and reasonable in order to protect the interests of the class members.

Notice of Suit to Class Members
The trial court also found that the settlement agreement did not provide adequate notices and forms to the class members. Specifically, the trial court found the notices gave class members scant or minimal information about their rights, the nature and character of the action itself, and its details; additionally, the trial court found that the settlement proposal presented itself as a done deal.
In class action litigation, due process requires that the absent class members be afforded notice of the suit, an opportunity to be heard and participate in the litigation, and, in actions for damages, a chance to opt out of the litigation. Carole J. Buckner, Due Process in Class Arbitration, 58 Fla. L. Rev. 185, 196 (January 2006). Due process in a class action further requires that the court, in certifying the class, evaluate the adequacy of both the representatives and counsel for the class. Id. In order to satisfy due process by protecting absent class members, the court must also scrutinize and approve any settlement of compromise of the class action. Id. (citing Linda S. Mullenix, Taking Adequacy Seriously: The Inadequate Assessment of Adequacy in Litigation and Settlement Classes, 57 Vand. L.Rev. 1687, 1692-93, 1696 (2004)). Judges effectively serve as guardians of the interests of absent class members in class actions, assuring that their interests are not sacrificed. Id.
Significant due process protection extends to settlement in class action litigation, including expanded oversight by judicial officers to protect the interests of absent class members against trade-off or unfair compromise. Id. at 200. Prior to dismissal, settlement, and compromise of a class action, the court must provide notice of settlement to the class and disclosure of any side deals involving settling parties. Id. Further, payment of greater amounts to some class members based on closer geographic proximity to the courts is prohibited. Id. Objectors must be provided with an opportunity to object to any settlement, and may, in the court's discretion, be granted an opportunity to opt out. Id.
For any class certified pursuant to rule 23(b)(3) (or under Florida Rule of Civil Procedure 1.220(b)(3)), the court must direct to all class members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2)(B). Florida's rule, like its federal counterpart, provides that the notice shall inform each member of the class that (A) any member of the class who files a statement with the court by the date specified in the notice asking to be excluded shall be excluded from the class, (B) the judgment, whether favorable or not, will include all members who do not request exclusion, and (C) any member who does not request exclusion may make a separate appearance within the time specified in the notice. *577 Fla. R. Civ. P. 1.220(d)(2)(A)-(C). The notice must explain the class member's rights to stay in the lawsuit or opt out, but it should be balanced, neither encouraging nor discouraging the class members from exercising one option or another. See Hoffmann-La Roche Inc., 493 U.S. at 165, 110 S.Ct. 482. The notice must be worded concisely and clearly, in plain, easily understood language; it should be drafted in a way that it is understandable by the people to whom it is directed. See Fed. R.Civ.P. 23(C)(2)(b).
In this case, the trial court, from early on, explained the heightened scrutiny applied when class certification and settlement approval are requested at the same time. It expressed concern that the case had been pending for more than three-and-one-half years, yet no information or advisement had been sent to individuals of the putative class. The trial court expressed concern with the notice by the parties and wrote its own notice. We agree that the trial court's notice more clearly reflects an unbiased account of the litigation and uphold it except for one sentence as noted herein.
Notably, the parties in their objection to the trial court's notice requirements took particular issue to the trial court's following statement:
This option would include those to whom this notice is sent who disagree with the filing of the lawsuit as a class action, in essence, a suit principally by taxpayers, as a class, against themselves for a refund to be paid by themselves as taxpayers of the county and thus they do not favor nor support the lawsuit filed as a class action nor the proposed settlement.
Specifically, the parties argue that this statement is false, as the taxpayers who will pay (if any) are not the same set of taxpayers who will benefit. We agree with the parties. Although the trial court supports its argument by citing to Hawkins v. Nicholas County, 89 S.W. 484 (Ky.Ct.App. 1905); Cabana, 1990 WL 1243738; Coe v. Broward County, 358 So.2d 214 (Fla. 4th DCA 1978); and Madison County v. Foxx, 636 So.2d 39 (Fla. 1st DCA 1994), aff'd in part, rev'd in part, 672 So.2d 840 (Fla. 1st DCA 1996), aff'd, 696 So.2d 728 (Fla.1997), rev'd, 522 U.S. 1145, 118 S.Ct. 1162, 140 L.Ed.2d 173 (1998), aff'd, 727 So.2d 245 (Fla. 1999), these cases are distinguishable.
For example, in Hawkins, 89 S.W. at 484, and Cabana, 1990 WL 1243738, the courts described the taxpayers' lawsuits as a suit against themselves and, taking into account equitable considerations, decided that a refund of the wrongly assessed tax was not proper. Additionally, in Coe, the Fourth District Court of Appeal held that denial of a refund of taxes unlawfully assessed by a court could not be justified solely on the ground that it would result in a disproportionate expense to the county, as compared to the benefit of the average taxpayer. 358 So.2d at 216. Nowhere in the case does the court require the suit to be classified in the manner in which the trial court proposed in this case. Id. Thus, the trial court's reliance on Coe is misplaced.
None of the cases relied on by the trial court dictate that its view of the case (namely that this case is, in essence, a suit by taxpayers, as a class, against themselves) must be written in the class members' notice. We agree with the parties that, by requiring this sentence in the class members' notice, the trial court breached its duty to be neutral and unbiased.

Conclusion
As indicated throughout this opinion, in order for the parties to propose an acceptable settlement agreement, the parties must provide the following: 1) that the *578 settlement fund will be diluted by the prorata sum attributable to each person who elects to opt out of the settlement; 2) that the attorneys' fees and costs will not be a determinative feature of the settlement (i.e., remove the section of the settlement agreement providing that the parties reserved the right to appeal judgment of final approval of settlement based on the trial court's award of attorneys' fees); and 3) notice to the absent class members in this case consistent with the trial court's proposal, except for the language which characterizes this litigation as taxpayers suing themselves as previously discussed in the opinion.
The petition for certiorari is granted in part and denied in part, and this case is remanded to the trial court for the entry of an order allowing the parties to propose a settlement agreement consistent with the dictates of this opinion.
POLSTON and THOMAS, JJ., concur.