CRENSHAW, Judge.
The Board of Trustees of the City Pension Fund for Firefighters and Police Officers in the City of Tampa (the Board) challenges an award of attorney’s fees to John N. Parker, as representative of a class of retired firefighters and police officers of the City of Tampa who are recipients of a “13th check.” Because the trial court erred in determining that chapters 175 and 185, Florida Statutes, and the substantial benefit doctrine govern the fee award in this case, rather than the common fund doctrine, we reverse. We affirm the amount of the fees, including the award of the contingency fee multiplier. We also certify a question to be of great public importance.

Background

John Parker is a retired firefighter for the City of Tampa and a beneficiary of the City Pension Fund for Firefighters and Police Officers in the City of Tampa. He brought an action in the circuit court challenging the Board’s decision not to issue a supplemental benefit, the “13th check,” for fiscal year 2004, discussed more thoroughly below. He was certified as a class representative for other beneficiaries of the 13th check program. Two hundred forty-three of the 13th check beneficiaries opted out of the litigation. Thereafter, once the Board determined its decision not to issue the 13th check was erroneous, the Board and Parker settled the case. The circuit court approved the settlement.
Parker sought attorney’s fees on behalf of himself and the class and included a request for a contingency fee multiplier. The circuit court awarded fees with a contingency fee multiplier of 2.0, holding the fees were authorized by sections 175.061 and 185.05, Florida Statutes (2010), and the substantial benefit doctrine.[1] In the trial court, the Board challenged the amount of fees as well as the source of their payment.

The 13th Check Program

The State of Florida has authorized local governments to enter into contracts, pursuant to special laws and local ordinances, regarding pension funds with firefighters and police officers. See ch. 175, Fla. Stat. (2010) (firefighter pensions); ch. 185, Fla. *67 Stat. (2010) (municipal police pensions). Specifically, pursuant to chapter 31810, Laws of Florida (1955), as amended by, inter alia, 2001-288, Laws of Florida, the City of Tampa is authorized to enter into a contract with its firefighters and police officers for their pensions. Ch. 01-288, § 1, at 3261, Laws of Florida (hereinafter Special Law). In 1998, the legislature added the 13th check program, a “supplemental pension distribution ... [for a]ll retired members who have terminated employment ... [and who] were eligible to receive pension benefits for at least 1 year.” Ch. 98-515, § 5, at 279, Laws of Florida (modified by, inter alia, Special Law § 27(A)). To that end, there exists within the pension fund a separate account specifically for 13th check program distributions. The provisions of the 13th check program do not apply to all of the pensioners generally, a fact critical to our determination of this ease.
In 2004, the Board determined it was not required to issue the 13th check and declined to do so in order to recoup cumulative actuarial losses to the pension fund even though it had earned a return on its investment sufficient to pay the 13th check. As the complaint alleged and the trial court’s judgment approving the settlement held, “there is no requirement in the 13th Check Program of the Pension Contract that all prior investment losses be made up in order for the 13th Check Program to be funded. Rather, there is only the actuarial requirement that the Base Plan have ‘cumulated actuarial gain.’ ”

Chapters 175 and 185 Do Not Apply

Attorney’s Fees and the American Rule

“Florida courts follow the ‘American Rule’ that attorney’s fees may only be awarded pursuant to an entitling statute or agreement among the parties.” Am. Family Mut. Ins. Co. v. Alvis, 72 So.3d 314, 317 (Fla. 2d DCA 2011) (citing Dade Cnty. v. Pena, 664 So.2d 959, 960 (Fla.1995)); see also State Farm Fire & Cas. Co. v. Palma, 629 So.2d 830, 832 (Fla.1993). Courts are hesitant to create exceptions to this rule. Reiterer v. Monteil, 98 So.3d 586, 587 (Fla. 2d DCA 2012). This case is governed neither by an express statutory provision nor by the parties’ contract.

No Express Statutory Authorization for Fees

Reviewing the entitlement to fees de novo, we conclude that this case is not governed by chapters 175 and 185. See Country Place Cmty. Ass’n v. J.P. Morgan Mortg. Acquis. Corp., 51 So.3d 1176, 1179 (Fla. 2d DCA 2010). Chapters 175 and 185 relate generally to firefighter and police pensions in Florida including such issues as requirements for retirement, § 175.162; beneficiaries, § 175.181; and disability retirement, § 175.191. See, e.g., Bd. of Trs. of Miami Firefighters’ & Police Officers’ Ret. Trust v. Fernandez, 675 So.2d 638 (Fla. 3d DCA 1996) (discussing disability retirement); Haddix v. City of Pan. City, 624 So.2d 801 (Fla. 1st DCA 1993) (discussing city’s contributions).
This case is distinct from Fernandez and Haddix because this litigation challenges the Board’s payments under the Special Law’s 13th check program, which is unique to the City of Tampa. The Special Law is not part of the general statutory construct of chapters 175 and 185. It does not apply statewide, and it has not often been, if ever, reproduced in other jurisdictions. We are not persuaded that the Florida Legislature intended that a unique program, established solely by a special law specific to one jurisdiction, be controlled by an attorney’s fee provision found in a regimen governing pension funds statewide. See Fla. Dep’t of Highway Safety & Motor Vehicles v. Hernandez, 74 So.3d *68 1070, 1074 (Fla.2011) (stating that legislative intent is guided by statutory analysis); Mendenhall v. State, 48 So.3d 740, 748 (Fla.2010) (“ ‘[A] special statute covering a particular subject matter is controlling over a general statutory provision covering the same and other subjects in general terms.’ ” (quoting McDonald v. State, 957 So.2d 605, 610 (Fla.2007))). In recognizing that chapters 175 and 185 do not control the award of attorney’s fees here, we turn next to an explanation of the common fund doctrine, which should have been applied in this case.

The Common Fund Doctrine Applies

The trial court awarded Parker and the class fees based on the substantial benefit doctrine rather than the common fund doctrine. Although this was error, it is understandable because these doctrines are similar. However, there are significant consequences to using one doctrine over the other, and the doctrines are guided by different policies. We further note that Florida has not adopted the substantial benefit doctrine. We decline to do so now because it is contrary to the American Rule and, in this case, causes unjust results.
In determining which doctrine applies we look at two key elements: (1) whether there exists a separate fund from which payment can be made, and (2) whether the relief in the case is primarily pecuniary. See Serrano v. Unruh, 32 Cal.3d 621, 186 Cal.Rptr. 754, 652 P.2d 985, 989 (1982); see also Truman J. Costello, P.A. v. City of Cape Coral, 693 So.2d 48, 51 (Fla. 2d DCA 1997) (discussing the importance of a fund); Stavenjord v. Mont. State Fund, 334 Mont. 117, 146 P.3d 724, 730-31 (2006) (discussing the common fund doctrine as composed of elements); Knebel v. Capital Nat’l Bank in Austin, 518 S.W.2d 795, 801 (Tex.1974) (discussing the importance of a pecuniary benefit). When both elements are met, the common fund doctrine applies; when they are not, the substantial benefit doctrine may apply.
This court has recognized that Florida has adopted the common fund doctrine:
[I]n its simplest terms, [the doctrine] provides that when litigation contributes substantial benefits to persons not party to the litigation and a fund is established from which the benefits will be paid, the persons responsible for gaining the benefit should be entitled to costs and attorney’s fees paid from the fund.
Costello, 693 So.2d at 49. Under this doctrine, where a fund is established for the benefit of a group, that fund will be used to pay attorney’s fees that benefit the group as a whole. See id. Although here some members of the group for which the fund is established have opted out of the litigation, it is equitable for them to contribute to the costs thereof because the litigation inures to their benefit.
The common fund doctrine is not contrary to the American Rule. Rather than fee-shifting, which is contrary to the American Rule, the common fund doctrine authorizes fee-sharing: fees are shared between the litigants and the fund’s beneficiaries (of which the litigants are a part), but fees are not shifted between parties adverse to one another. Kuhn v. State, 924 P.2d 1053, 1057-58 (Colo.1996) (“Thus, unlike statutory fees, which result in a shifting of the fee burden to the losing party, common fund fees result in a sharing of the fees among those benefited by the litigation.” (quoting Brown v. Phillips Petrol. Co., 838 F.2d 451, 454 (10th Cir. 1988))); Morris B. Chapman & Assocs. v. Kitzman, 193 Ill.2d 560, 251 Ill.Dec. 141, 739 N.E.2d 1263, 1271 (2000) (“The common fund doctrine does not authorize a party to shift fees to an adversary, but *69 rather authorizes the spread of fees among those who benefítted from the litigation In contrast, the substantial benefit doctrine is more in the nature of traditional fee-shifting between adversaries. See Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 392, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) (stating that the “exception has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself’). This is a principal reason we do not adopt it.
Both elements that implicate use of the common fund doctrine are met in this case: the presence of a fund and a pecuniary benefit to a party. First, the class sought remuneration for the failure of the Board to issue the 13th check; the litigation resulted in the creation of a fund from which to pay the proceeds. Importantly, this fund paid benefits to all of the 13th check program beneficiaries and did not pay out to other pensioners who are not part of the 13th check program. To apply the common fund doctrine is equitable because it prevents a windfall to both the 13th cheek program participants and to the litigation opt-outs. Second, the remedy obtained in this case is primarily pecuniary, notwithstanding the de minimis change in the Board’s interpretation of the 13th check program: the Board had to disburse money to 13th check program participants.[2] In the present case, the elements comprising the common fund doctrine are met. This compels its use, rather than that of the substantial benefit doctrine. Moreover, the substantial benefit doctrine is ill-suited to the facts of this case and is alien to Florida law.[3] While there may be an appropriate case in which to adopt the substantial benefit doctrine in the future, an argument we do not foreclose, this is not that case.

The Contingency Risk Multiplier

The standard of review regarding the application of a multiplier is for an abuse of discretion. USAA Cas. Ins. Co. v. Prime Care Chiro. Ctrs., P.A., 93 So.3d 345, 347 (Fla. 2d DCA 2012). Our task, therefore, is to determine whether there is competent, substantial evidence to support the trial court’s application of the multipli *70 er. Id. Such evidence must support findings regarding “ ‘(1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel[,]’” (2) the attorney’s ability to mitigate risk of nonpayment, and (3) the factors set out in Florida Patients’ Compensation Fund v. Rowe.[4] Id. (quoting Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828, 834 (Fla. 1990)). The record reflects that the trial court made its determination after receiving competent, substantial evidence on each of these issues. We therefore affirm the contingency fee award.

Conclusion

The common fund doctrine governs this case, and because the trial court erred in applying chapters 175 and 185 and the substantial benefit doctrine, we reverse. We remand for further proceedings in accordance with this opinion and certify the following question to be of great public importance:
ARE THE PREVAILING PARTY ATTORNEY’S FEES PROVISIONS OF SECTIONS 175.061(5) AND 185.05(5), FLORIDA STATUTES, APPLICABLE TO JUDICIAL PROCEEDINGS TO ENFORCE CLAIMS UNDER LOCAL LAWS PLANS OR SPECIAL ACTS?
Reversed in part; affirmed in part; remanded; question certified.
VILLANTI and MORRIS, JJ, Concur.

. Sections 175.061(5) and 185.05(5) contain prevailing party language that the special law at issue in this case does not: "In any judicial proceeding or administrative proceeding under chapter 120 brought under or pursuant to the provisions of this chapter, the prevailing party shall be entitled to recover the costs thereof, together with reasonable attorney's fees."

. Thus, this is a case where the benefit is primarily monetary, in contrast to cases modifying interpretations of other statutory rights, such as Hall v. Cole, 412 U.S. 1, 5, 7, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), which primarily addressed the "Bill of Rights of Members of Labor Organizations” under the Labor-Management Reporting and Disclosure Act of 1959.

. The substantial benefit doctrine "developed as a variant of the common-fund theory.” Serrano, 186 Cal.Rptr. 754, 652 P.2d at 989. It has generally been applied in federal securities cases. The substantial benefit doctrine is one of equity that allows courts to shift attorney's fees in the absence of statutory or contractual authorization and has specifically been used in federal securities cases, especially shareholder derivative actions. Hall v. Cole, 412 U.S. 1, 5, 7, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); Mills, 396 U.S. at 394, 90 S.Ct. 616 ("This development has been most pronounced[] in shareholders’ derivative actions....”); Sprague v. Ticonic Nat’l Bank, 307 U.S, 161, 59 S.Ct. 777, 83 L.Ed. 1184(1939).
In Costello, we discussed Sprague as one volume of the federal trilogy establishing the common fund doctrine. 693 So.2d at 49-50. Sprague is the common root the doctrines share, but the common fund doctrine has been more fully developed and widely accepted than has the substantial benefit doctrine. See York Ins. Grp. of Me. v. Van Hall, 704 A.2d 366, 368 & n. 3 (Me. 1997) (stating that the majority of jurisdictions have adopted the common fund doctrine). Our review of the caselaw from our sister states indicates only a minority of them have even discussed the substantial benefit doctrine.

. 472 So.2d 1145 (Fla. 1985).